TRINETTE G. KENT (State Bar No. 222020)
3219 E Camelback Rd, #588
Phoenix, AZ 85018
Telephone: (480) 247-9644
Facsimile: (480) 717-4781
E-mail: tkent@kentlawpc.com

*Attorneys for Plaintiff,*
*Maria Eugenia Murillo*

# IN UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARIA EUGENIA MURILLO, | Case No.: |
| Plaintiff, | **VERIFIED COMPLAINT** |
| vs. | **JURY TRIAL DEMAND** |
| EQUIFAX INFORMATION SERVICES LLC, | |
| Defendant. | |

Maria Eugenia Murillo ("Plaintiff"), by and through the undersigned counsel, with knowledge as to Plaintiff's own acts and investigation of counsel as to the acts of others, believing that further investigation and discovery will confirm that such allegations have substantial evidentiary support, brings this action against defendant EQUIFAX INFORMATION SERVICES LLC. ("Equifax" or "Defendant"), and alleges as follows:

# PRELIMINARY STATEMENT

1. Plaintiff brings this action against Defendant pursuant to the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* ("FCRA"), to recover actual, statutory, and punitive damages, as well as costs and attorney's fees, resulting from Defendant's failure to abide by the requirements of the FCRA as more fully described below.

2. Since 1970—when Congress enacted the "FCRA"—federal law has required credit reporting agencies ("CRAs"), such as Defendant, to have in place and to utilize reasonable procedures to assure **"maximum possible accuracy"** of the personal and financial information that they compile and sell about individual consumers. *See* 15 U.S.C. § 1681e(b) The FCRA sets forth this and many other requirements for CRAs' operations.

3. Credit reports and credit scores play a crucial role in consumers' lives. They determine a consumer's ability to obtain credit and the amount they must pay for it, and whether they can buy a house or rent an apartment. It could even affect a consumer's ability to find a job. Lenders rely on credit reports and credit scores as a primary factor in the decision whether to extend credit and at what price; home and auto insurers decide whether to offer insurance and base their rates on specialized credit scores; and many employers and landlords rely on reports before making decisions about whom to hire or rent to.

4. This case concerns one of the worst-known problems in credit reporting — *i.e.*, the "**mixed file**." Mixed files occur where information belonging to one consumer is improperly reported in another consumer's credit report.

5. The instant case involves the "mixing" of approximately thirty accounts, which include collection accounts, and a bankruptcy filing that Plaintiff tried many times over many years to fix with Equifax. Plaintiff believes her sister-in-law, who shares a similar name and lives in the same town as Plaintiff, was the true owner of the erroneous accounts that have haunted Plaintiff for so long.

6. "Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system." 15 U.S.C. § 1681(a)(1). "Consumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers." 15 U.S.C. § 1681(a)(3). "There is a need to ensure that consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right of privacy." 15 U.S.C. § 1681(a)(4).

7. "It is the purpose of this [Act] that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information …" 15 U.S.C. § 1681(b).

8. Section 1681e(b) provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

9. A consumer report, also known as a credit report, is a "communication of any information by a [CRA] bearing on a consumer's creditworthiness. . . which is used . . . as a factor in establishing the consumer's eligibility for [] credit . . . to be used primarily for personal, family, or household purposes." 15 U.S.C. § 1681a(d)(1).

## JURISDICTION

10. Jurisdiction is proper under 28 U.S.C. § 1331, and 15 U.S.C. § 1681p ("FCRA") as this action arises under the laws of the United States.

11. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), as a substantial part of the acts and omissions giving rise to the claims occurred within this judicial district.

## PARTIES

12. Plaintiff is a natural person who resides in Yuba City, California.

13. Defendant Equifax is a corporation with its principal place of business located at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309. Equifax receives dispute letters at PO Box 740256, Atlanta, GA 30374. Its registered agent in California is the Prentice-Hall Corporation System, Inc. located at 2710 Gateway Oaks Drive, Suite 150N, Sacramento, CA 95833.

14. Equifax is a credit reporting agency that compiles and maintains files on consumers on a nationwide basis for the purpose of furnishing consumer reports to third parties bearing on a consumer's credit worthiness, credit standing, or credit capacity. Equifax regularly conducts business in Texas.

## STATEMENT OF FACTS

*This is a mixed file case*

15. A mixed file occurs when a CRA "mixes" information belonging to one consumer into the file of another consumer. Here, Equifax mixed—in whole or in significant part—the credit file of an unknown person who Plaintiff believes is her sister-in-law who has a similar name as Plaintiff's who also lives in Yuba City, California.

16. Plaintiff discovered that her Equifax credit report contained the wrong name of Maria D Murillo Corona, the wrong social security number, the wrong date of birth, the wrong residential address, a bankruptcy that did not belong to Plaintiff, two collection accounts that did not belong to Plaintiff, and approximately 26 other accounts that did not belong to Plaintiff. These mixed file issues are not in Plaintiff's Experian or TransUnion credit reports.

17. This mixed information should have never appeared on Plaintiff's Equifax credit report, but Plaintiff disputed the mixed file accounts with Equifax several times by mail and phone.

18. Plaintiff's most recent disputes to Equifax took place in August and September 2022, when she sent dispute letters via certified mail that were delivered to Equifax on August 22, 2022, and September 6, 2022. In response to both disputes, Equifax stated that it was not able to locate Plaintiff's credit file. As of February 9, 2023, Equifax was not reporting the mixed file information of Maria D Murillo Corona. But Equifax is now not reporting any information for Plaintiff—at all. Plaintiff has account information and credit scores for Experian and Trans Union. But, for Equifax, she does not exist.

**Equifax's Long History of Mixing Consumer Files**

19. Equifax has a long history of mixing file information.

20. In 2012, Ohio Attorney General Mike DeWine initiated a multistate investigation of the credit reporting practices of consumer reporting agencies Equifax, Experian, and Trans Union, including the incidence of mixed files. Thirty-one states participated in the enforcement action, which resulted in a $6,000,000 settlement with Equifax, Experian, and Trans Union.[1] Pursuant to the settlement, the three CRAs promised, among other things, "to implement an escalated process for handling complicated disputes – such as those involving . . . mixed files — where one consumer's information is mixed with another's."[2]

---

[1] https://www.texasattorneygeneral.gov/news/releases/attorney-general-paxton-announces-6-million-settlement-credit-reporting-agencies (last visited July 21, 2021).
[2] *Id.*

- 6 -
VERIFIED COMPLAINT

21. And on October 19, 2016, Mississippi Attorney General Jim Hood announced that Equifax, along with Trans Union and Experian,[3] agreed to a settlement that, among other things, required the three CRAs to (a) "escalate mixed file disputes to specialized agents with substantial experience processing this type of dispute,"[4] and (b) pay the state of Mississippi more than seven million dollars.[5]

22. More recently, the New York Attorney General filed charges and settled claims with Equifax (and Experian and Trans Union) concerning mixed files. *See In the Matter of Eric T. Schneiderman, Attorney General of the State of New York v. Experian Information Solutions, Inc.; Equifax Information Services, LLC; and TransUnion LLC.*[6]

23. Well before Equifax mixed information in Plaintiff's credit file with information from credit files of one or more other consumers, Equifax was very much aware that both the Federal Trade Commission and attorneys general of various states

---

[3] Although not named Defendants in the Mississippi Complaint, Trans Union and Equifax participated in the settlement because they were, at the time, the subject of an investigation by the Mississippi Attorney General.

[4] http://www.ago.state.ms.us/wp-content/uploads/2016/10/CREDIT-REPORTING-REFORM-BENEFITS-MISSISSIPPIANS.pdf  (last visited July 21, 2021).

[5] http://www.ago.state.ms.us/releases/attorney-general-jim-hood-announces-that-experian-transunion-and-equifax-  will-overhaul-credit-reporting-practices-and-end-deceptive-marketing-in-mississippi/  (last visited July 21, 2021).

[6] https://superiortradelines.com/wp-content/uploads/2015/05/Press-Release.pdf  https://ag.ny.gov/pdfs/CRA%20Agreement%20Fully%20Executed%203.8.15.pdf   (both last visited July 21, 2021).

had deemed the mixed file issue important enough to bring enforcement actions concerning or related to mixed files[7].

24. Upon information and belief, Equifax has been sued a vast number of times in the past ten years alone in cases that included an allegation that it mixed the credit files of two or more consumers.[8] Moreover, upon information and belief, the number of mixed file complaints sent to Equifax, which have not resulted in litigation, is immense.

**Equifax Inaccurate Tradelines**

25. On recent credit reports, Equifax has improperly attributed the following information to Plaintiff, which do not belong to her:

---

[7] https://www.texasattorneygeneral.gov/news/releases/attorney-general-paxton-announces-6-million-settlement-credit-reporting-agencies ("This settlement elevates standards placed on credit reporting agencies, which will provide greater protections for consumers in Texas and nationwide," Attorney General Paxton said. "A good credit rating is an increasingly important piece of people's lives, and the results of this effort will give consumers greater assurance that their score is a fair and accurate reflection of their financial health.").

[8] Private FCRA lawsuits have resulted in multi-million dollar verdicts for consumers with mixed files. For example, in 2002, the jury in *Judy Thomas v. Trans Union LLC,* District of Oregon, Case No. 00-1150-JE, found Trans Union had willfully violated the FCRA by mixing Judy Thomas with another consumer and failing to unmix them despite Ms. Thomas' disputes. The jury awarded Ms. Thomas $5 million in punitive damages and $300,000 in actual damages. In 2007, the jury in *Angela Williams v. Equifax Information Services, LLC,* Circuit Court for Orange County Florida, Case No. 48-2003-CA-9035-0, awarded Angela Williams $2.7 million in punitive damages and $219,000 in actual damages for willfully violating the FCRA by mixing Angela Williams with another consumer and failing to unmix them despite Ms. Williams' disputes. Despite the verdict, Equifax continues to mix consumers' files with other consumers' files. In 2013, the jury in *Julie Miller v. Equifax Information Services, LLC,* District of Oregon, Case No. 3:11-cv-01231-BR, awarded Julie Miller $18.4 million in punitive damages and $180,000 in actual damages for willfully violating the FCRA by mixing Julie Miller with another consumer and failing to unmix them despite Ms. Millers' disputes. Despite these and other, similar verdicts (of which Equifax doubtlessly is aware), Equifax continues to mix consumer files.

**Names:**
- Maria D Murillo Corona
- Maria A Corona

**Social security number:**
- Ending in 3568

**Date of birth:**
- September 3, 1983

**Residential information:**
- 258 Dorman Ave., Apt. A, Yuba City, CA 95991

**Bankruptcy:**
- Eastern District of California bankruptcy filed in May 2019, Case No. 19-22836

**Accounts:**
- Traviscu Act 406348484; Opened in September 2021
- LendClub Bank Act 189150878; Opened in May 2022
- CreditOne Bank Act 4447962492396563; Opened in February 2020
- CapOne Act 515307746469; Opened in December 2019
- CBNA Act 512107202548; Opened in May 2011
- CBNA Act 504994016821; Opened in July 2005
- CBNA Act 512107197996; Opened in May 2009
- CBNA Act 6035320215659028; Opened in May 2013
- CITI Act 542418072761; Opened in March 2013
- CreditOne Bank Act 379364023181806; Opened in July 2022
- CreditOne Bank Act 37936401769421; Opened in July 2022
- Kohls/Cap1 Act 6393050995408978; Opened in July 2022
- Kohls/Cap1 Act 6393050625153124; Opened in January 2017
- OneMain Act 5184277020161980; Opened in October 2018
- OneMain Act 8164277020161980; Opened in May 2018
- OneMain Act 6070509745105783; Opened in June 2016
- OneMain Act 6070509731180596; Opened in May 2015
- Royal Prst Act 21482084; Opened in March 2017
- Syncb/JCP Act 546680401093; Opened in July 2022
- Syncb/JCP Act 600889592955; Opened in August 2018
- Syncb/Sams Act 604599102435; Opened in July 2022
- Syncb/Sams Act 604599211291; Opened in May 2017
- Syncb/Sams Act 604599216093; Opened in May 2017
- Syncb/Walm Act 523914110981; Opened in August 2017

- TD/Target Act 4352371710954158; Opened in April 2017
- WFDS/WDS Act 518520742601; Opened in February 2013

**Collections**

- CBNA Act 504994151025; Opened in March 2017
- Kohls/Cap1 Act 6393050863384269; Opened in March 2017

26. On information and belief, Equifax may have been reporting the wrong information to third parties since at least 2016 and has cost Plaintiff many credit opportunities over that period of time.

*Equifax's violations of 15 U.S.C. § 1681e(b)*

27. FCRA § 1681e(b), in pertinent part, provides: "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." Liability under § 1681e(b) arises when a CRA prepares consumer reports without maintaining and following reasonable procedures to assure maximum possible accuracy of those reports.

*Plaintiff's disputes and Equifax's violations of 15 U.S.C. § 1681i*

28. Over the last 6 years, Plaintiff has written and called Equifax many times to find out why someone's credit file has been mixed with her own file. Equifax ignored her at every turn. So, Plaintiff gave up trying to remove the errors from her Equifax credit file.

29. But then in August 2022, Plaintiff wanted to obtain a mortgage. And on August 5, 2022, the lender pulled Plaintiff's credit reports and informed Plaintiff that

she had a bankruptcy, 2 collections, and her debt-to-income ratio was way too high for her to obtain a mortgage loan. As a result, Plaintiff re-engaged with Equifax to remove those mixed file errors.

30. On August 16, 2022, Plaintiff sent a dispute letter to Equifax, stating that Equifax improperly mixed her sister-in-law's credit file with her own. That letter was delivered to Equifax on August 23, 2022.

31. In response, Equifax informed Plaintiff that it could not locate Plaintiff's credit file.

32. On August 22, 2022, Plaintiff sent a more detailed dispute letter to Equifax that identified each item that was wrong in her Equifax credit file: the wrong names, addresses, social security number, accounts, collections, and bankruptcy. That letter was delivered to Equifax on September 6, 2022.

33. Equifax responded to Plaintiff, again, that it could not locate Plaintiff's credit file.

34. On October 18, 2022, Plaintiff tried to access her Equifax credit file, but it did not exist.

35. Plaintiff's Equifax credit report went from approximately 30 accounts that did not belong to Plaintiff to a complete removal of her credit file. She no longer exists as a consumer according to Plaintiff's Equifax credit report.

36. On February 9, 2023, Plaintiff accessed all three of her credit reports: Equifax, Experian, and Trans Union.

37. Plaintiff has a name, address, account history, credit scores, and credit inquires on her Experian and Trans Union credit reports. But her Equifax credit report remains blank.

38. Equifax had an opportunity to investigate Plaintiff's disputes and remove the erroneous information that did not belong there. But, instead, Equifax made Plaintiff disappear. A disappearance that will continue to haunt Plaintiff as she applies for additional home mortgages.

39. Pursuant to § 1681i(a)(1), the FCRA requires a CRA to complete a reasonable reinvestigation of the accuracy of any item of information in a consumer's credit file that the consumer disputes to the CRA within 30 days of the dispute. § 1681i(a)(1).

40. Pursuant to § 1681i(a)(5), a CRA must "promptly delete [disputed] information from the file of the consumer, or modify [disputed] information, as appropriate" after completing its § 1681i(a)(1) reinvestigation if the CRA finds that the disputed information is "inaccurate or incomplete *or cannot be verified*." § 1681(a)(5) (emphasis added).

41. Additionally, § 1681i(a) mandates that within 5-business days from receiving notice of dispute from a consumer, it shall send the dispute to the company furnishing the information. Then the CRA has 30 days from the period beginning on the date on which the CRA receives notice of the dispute from the consumer to notify the consumer of the results of its investigation.

42. Had Equifax reasonably investigated Plaintiff's disputes, then Equifax would have fixed the mixed file issue. Instead, Equifax caused her credit file to disappear. Plaintiff will need all 3 of her credit reports to qualify for a home loan.

*Damages*

43. At all times pertinent hereto, the conduct of Equifax as well as its respective agents, servants, and employees, was malicious, intentional, willful, reckless, negligent and in wanton disregard for the rights of Plaintiff under applicable law.

44. As a direct and proximate result of Equifax's willful and negligent actions, conduct, and omissions, Equifax published inaccurate derogatory information about Plaintiff to third parties. Accordingly, Plaintiff suffered cognizable actual damages, including but not limited to: (a) not yet known credit harm; (b) damage to Plaintiff's reputation for creditworthiness; (c) inability to obtain a home mortgage; and (c) emotional distress, anxiety, frustration, humiliation, and embarrassment.

45. Moreover, because Equifax apparently reported Plaintiff's personal information on consumer reports about one or more other consumers, Plaintiff was also damaged because, in disclosing Plaintiff's information to other consumers and creditors who inquired about other consumers, Equifax violated Plaintiff's privacy rights.

46. For years, Plaintiff has been trying to fix this mixed file issue. The efforts have caused Plaintiff to suffer a loss of self-esteem, emotional distress, embarrassment, frustration, mental anguish, humiliation, and anxiety.

47. Plaintiff has suffered damages proximately caused by the conduct of Equifax:

    i. Loss of self-esteem, emotional distress, embarrassment, frustration, mental anguish, humiliation, and anxiety;

    ii. Time and expense of pulling/reviewing credit reports to verify the Mixed File Information;

    iii. Having had to accept higher interest rates on loans or been denied access to credit based upon the Mixed File Information;

    iv. Mixed File Information on Plaintiff's credit reports and a negative impact to Plaintiff's credit ratings;

    v. An inability to improve Plaintiff's credit score during the dispute and litigation process;

    vi. A lower credit score; and

    vii. Having to hire attorneys to combat the Mixed File Information and improper credit reporting.

48. Additionally, because Equifax's conclusion to its investigation resulted in the complete dismissal of her credit file, Plaintiff will not be able to qualify for a home loan until Equifax reports Plaintiff's genuine credit file.

## COUNT I
## VIOLATIONS OF FCRA §§ 1681e(b) and 1681i

49. Plaintiff incorporates the preceding paragraphs as though fully set forth herein.

50. A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports.

*See* 15 U.S.C. § 1681a(f).

51. Equifax is a consumer reporting agency as defined by Section 1681a(f) of the FCRA.

52. Equifax violated 15 U.S.C. § 1681e(b) by its conduct, acts, and omissions in failing to establish or to follow reasonable procedures to assure maximum possible accuracy of information concerning Plaintiff in the preparation and publication of Plaintiff's consumer reports.

53. Equifax violated multiple sections of 15 U.S.C. § 1681i by its acts and omissions, including, but not limited to, the following:

   a. failing to (i) conduct a reasonable reinvestigation of Plaintiff's dispute concerning all items of information that Plaintiff disputed, and (ii) record the correct status of the disputed information or delete the disputed information from Plaintiff's credit file, in violation of § 1681i(a)(1);

   b. failing to delete the erroneous items from Plaintiff's Equifax credit file within the 30-day period of receiving Plaintiff's

disputes, in violation of § 1681i(a)(1);

c. failing to provide Plaintiff's disputes to the companies that provided the information to Equifax within 5 business days, in violation of § 1681i(a)(2);

d. failing to review and consider all relevant information submitted by Plaintiff concerning Plaintiff's dispute, in violation of § 1681i(a)(4); and

e. failing to properly delete items of disputed information from Plaintiff's credit file that Equifax could not have verified upon a lawful reinvestigation in violation of § 1681i(a)(5).

54. These violations of §§ 1681e(b) and 1681i were willful, rendering Equifax liable for statutory damages, actual damages, costs and reasonable attorney's fees, and punitive damages in an amount to be determined by the Court pursuant to § 1681n.

55. In the alternative, Equifax's violations of §§ 1681e(b) and 1681i were negligent, entitling Plaintiff to recover actual damages, costs, and reasonable attorney's fees pursuant to § 1681o.

**WHEREFORE**, Plaintiff seeks judgment in Plaintiff's favor and damages and equitable relief against Equifax:

1. Awarding against Equifax actual damages, statutory damages, punitive damages, costs and reasonable attorney's fees pursuant to 15 U.S.C. §

    1681n and § 1681o;

2. Ordering that Defendant Equifax:

    a. immediately and permanently (i) delete all inaccurate information from Plaintiff's credit reports and files, (ii) begin to report Plaintiff's actual credit reports and files, and (iii) cease reporting the inaccurate information to all persons and entities to whom Equifax reported consumer credit information; and

    b. send updated and corrected credit report information to all persons and entities to whom Equifax reported inaccurate information about Plaintiff within the last three years; and

3. Such other and further relief as may be necessary, just, and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury as to all issues so triable.

DATED: February 10, 2023

                                                 */s/ Trinette G. Kent*
                                                 Trinette G. Kent
                                                 Attorneys for Plaintiff

## **VERIFICATION**

Plaintiff Maria Eugenia Murillo declares as follows:

1. I am the Plaintiff in this Verified Complaint.

2. I reside in Yuba City, California.

3. I have personal knowledge of myself and my activities, including those set forth in this Verified Complaint. If called to testify, I could and would testify competently and truthfully as to the matters stated in this Verified Complaint.

4. I verify and affirm under penalty of perjury under the laws of the United States of America and the State of California that the factual averments in this Verified Complaint concerning myself and my activities are true and correct pursuant to 28 U.S.C. § 1746.

Executed on:_____2/10/2023_____

_____
**ID 52oqYFrL6oZSC68s9Ast7pX8**
/s/ Maria Eugenia Murillo, Plaintiff

## eSignature Details

**Signer ID:**       **52oqYFrL6oZSC68s9Ast7pX8**
Signed by:           Maria Eugenia Murillo
Sent to email:       mariarrivera2224@gmail.com
IP Address:          174.208.96.2
Signed at:           Feb 10 2023, 3:41 pm CST